# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 755 | **DATE** | 6/27/2003 |
| **CASE TITLE** | FRAZIER vs. NOLEN, ET AL | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Defendant Board of Education of the City of Chicago is granted. Defendant Board of Education of the City of Chicago is dismissed. Defendant Nolen's motion to dismiss is granted as to counts II, III, IV, V, VI, and VII only.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 0 7 2003 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | | mailing deputy initials | |

03 JUL -6 PM 6:33

FILE...
U.S. DISTRICT COURT
CLERK

Date/time received in central Clerk's Office

SHEILA FRAZIER,

     Plaintiff,

     v.

BOARD OF EDUCATION OF THE CITY
OF CHICAGO and FULTON NOLEN, JR.,

     Defendants.

No. 03 C 0755
Judge James B. Zagel

**DOCKETED**

JUL 0 7 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Sheila Frazier has brought a civil rights suit against the Board of Education of

the City of Chicago (the "Board") and Fulton Nolen, asserting various federal and state law

claims against them including alleged violations of her rights pursuant to the First and Fourth

Amendments of the United States Constitution and state law claims of battery, false arrest,

malicious prosecution, violation of the Illinois Whistle Blower Statute, and intentional infliction

of emotional distress ("IIED"). In her prayer for relief, Frazier seeks punitive damages, costs,

and attorneys' fees against both defendants. Defendant Nolen moves to dismiss Counts II

through VII pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendant Board moves to

dismiss the entire Complaint as it pertains to it, namely Counts IV through VII, pursuant to Rule

12(b)(6) as well.


Factual Background

Since August 27, 2001, Nolen has been the principal of Lindblom College Preparatory

High School, a public high school on Chicago's south side. Frazier, a former teacher at



Lindblom, alleges that she spoke out on matters of public concern and that Nolen retaliated against her by, among other things, providing negative teaching performance evaluations and attempting to suspend her. In September 2001, Nolen allegedly ended a meeting in his office with Frazier by calling the Chicago Police and telling them that there were intruders in the building. As a result, according to Frazier, she was arrested and charged by the police with trespassing. Later, at Nolen's request, the court dismissed the charges. In addition, on or about October 31, 2001, Frazier came to Nolen's office and informed him that she needed to speak to him about budgetary matters and other school issues. After Nolen declared the discussion over and walked away, Frazier allegedly followed him and told him that these issues needed to be addressed. When Frazier reached a doorway leading to Nolen's office, Nolen allegedly shut a door on Frazier's fingers, causing her injury.

Standard of Review

Under Rule 12(b)(6), Nolen is permitted to move for dismissal of "any pleading" that "fail[s] to state a claim upon which relief can be granted." Dismissal of a complaint is proper if it appears beyond doubt that no set of facts support the plaintiff's claim for relief. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). I am not obliged to accept as true legal conclusions or unsupported allegations. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001). Further, I am not bound by the plaintiff's legal characterization of the facts, *see Agnew v. Bd. of Educ. of City of Chicago*, No. 97 C 5993, 1998 WL 386155, *2 (N.D. Ill. July 7, 1998), nor am I required to ignore facts in the complaint which undermine her claims, *see Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1991).

<u>Count II: Fourth Amendment (False Arrest)</u>

Nolen claims that Frazier's § 1983 (Fourth Amendment) claim for false arrest fails

because she does not allege any constitutional deprivation on the part of Nolen in connection

with the events surrounding Frazier's arrest and because, even if Frazier could make out a

constitutional violation by Nolen, he is shielded from liability by qualified immunity.

The first issue is whether Nolen can be liable for false arrest solely by providing false

information to an arresting officer. As argued by Nolen, there is authority for the proposition that

an individual, even a governmental actor, cannot commit false arrest simply by supplying false

information to an arresting officer. *See Munoz v. Chicago Sch. Reform Bd. of Trustees*, No. 99 C

4723, 2000 WL 152138, at *6 (N.D. Ill. Feb. 4, 2000); *Meesig v. Bresnahan*, No. 95 C 4918,

1997 WL 639053 (N.D. Ill. Oct. 3, 1997); *Jones v. Harris*, No. 88 C 8879, 1989 WL 24132

(N.D. Ill. Mar. 16, 1989); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir.

1985); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 326-27 (7th Cir. 1978). Judge Nordberg

eloquently explained:

> In the context of private citizens, even providing false information to the police in a
> complaint is insufficient to establish § 1983 liability against the complainant. As the
> Seventh Circuit ruled nearly twenty years ago, "It is well settled in Illinois that 'giving
> information to police in itself is insufficient to constitute participation in an arrest.'"
> *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 326 (7th Cir.1978) (citations omitted)
> (basing decision, at least in part, on "color of law" requirement of § 1983 actions).
> Although Bresnahan was an official acting in his official capacity when he signed the
> complaint, he did not "participate" in Trepanier's arrest any more than if he were a
> private citizen signing the complaint: The fact that Bresnahan was a government actor is
> merely incidental. In terms of causation, the Court concludes that Bresnahan's action of
> signing the complaint was not the "proximate cause" of Trepanier's alleged constitutional
> deprivation as the arresting officer broke the "causal chain" between Bresnahan's actions
> and Trepanier's alleged deprivation. *Id.* (observing that a police officer receiving
> information decides whether to act on it).

3

*Meesig*, 1997 WL 639053, at *4.

Were this line of cases to stand by itself, I would be inclined to agree with Nolen. Nonetheless, the most recent Seventh Circuit pronouncement on this issue takes the opposite conclusion. In *Yeksigian v. Nappi*, 900 F.2d 101, 102-03 (7th Cir. 1990), the supervisor of the plaintiff, an employee of the City of Chicago, called the Chicago Police Department, provided the police with false statements, and signed a criminal complaint against the plaintiff for disorderly conduct, which resulted in the plaintiff's arrest. In reversing the district court's decision to grant defendants' motion to dismiss the plaintiff's Fourth Amendment claim, the Seventh Circuit distinguished the case from those in which a private party had provided false information on the basis that *Yeksigian* "involve[d] city supervisory personnel, who [had] allegedly abused their authority as city supervisory personnel, to secure without justification the arrest of an employee under their supervision at a city-owned facility." *Id.* at 104. Accordingly, the Court held that the plaintiff had sufficiently alleged false arrest on the basis of his allegation that his superiors had abused their authority by securing the arrest of the plaintiff by supplying false information to the arresting officer. *Id.* Although I may disagree with this conclusion, I am bound by this precedent.

Here, Frazier alleges that Nolen, a state actor, called the Chicago Police Department to provide false information about Frazier, brought trespassing charges against her, and caused her to be arrested and charged by the Chicago Police Department in retaliation for her speech on matters of public concern. Frazier also alleges that Nolen knew that she had committed no crime and that there was no probable cause to arrest her. As in *Yeksigian*, therefore, we have a situation where a defendant allegedly knowingly abused his authority as a state actor by providing

4

information he knew to be false in requesting and causing the plaintiff to be arrested. Accordingly, these allegations are sufficient to state a Fourth Amendment claim for false arrest.

Nonetheless, qualified immunity bars Frazier's Fourth Amendment claim against Nolen. The threshold inquiry on a qualified immunity defense is whether, taken in the light most favorable to the plaintiff, "the facts alleged show the officer's conduct violated a constitutional right." *Doe v. Heck*, 327 F.3d 492, 509 (7th Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). However, even if Frazier could show a constitutional violation, Nolen is still protected by immunity unless he reasonably should have known his actions would violate a clearly established constitutional right. "Governmental officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Id.* at 515. The dispositive inquiry is whether it would be clear to a reasonable official that his actions, in the specific context of this case, were unlawful. *See Saucier*, 533 U.S. at 201. Here, in light of the current conflicting legal authority as to whether merely giving false information to the arresting police gives rise to constitutional liability, Nolen could not reasonably have known that his alleged actions amounted to the violation of a "clearly established" constitutional right. He is thus entitled to qualified immunity.

Count III: Battery under Illinois Law

Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act" or the "Act"), Frazier's battery claim is barred because it was not filed within one year of the alleged battery. The Act provides that [n]o civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is

5

commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101. Importantly, the Act expressly insulates from liability not only the Board but also its employees, like Nolen, for civil actions brought outside the one-year time limit, *see* 745 ILCS 10/1-101 & 207, and Illinois courts strictly construe this one-year time bar, *see, e.g., Niziolek v. Chicago Transit Auth.*, 620 N.E.2d 1097, 1104 (Ill. App. Ct. 1993); *Ramos v. City of Chicago*, 707 F.Supp. 345, 347 (N.D. Ill. 1989). Here, Frazier alleges that Nolen, an acknowledged employee of the Board, committed civil battery against her on October 31, 2001, and this is the date any civil battery claim against Nolen accrued. But Frazier filed the instant lawsuit on January 31, 2003 -- a full year and three months after the alleged battery took place. Accordingly, Count III is time-barred, and I dismiss it with prejudice.

Count IV: False Arrest Under Illinois Law

Frazier's state law claim against Nolen and the Board is similarly barred as a matter of law pursuant to the one-year statute of limitations under the Tort Immunity Act. As with the federal false arrest claim, the basis for the state false arrest claim is that in September 2001, Nolen allegedly caused Frazier to be arrested and charged for criminal trespass by the Chicago police. Thus, any civil claim for false arrest accrued in September 2001. Frazier filed the instant complaint more than one year after her alleged claim for false arrest accrued. Accordingly, Count IV is time-barred, and I dismiss it with prejudice.

Count V: Malicious Prosecution Under Illinois Law

6

To state a claim for malicious prosecution, Frazier must allege that: (1) Nolen and the Board brought a previous action against her maliciously and without probable cause; (2) that the previous action was terminated in her favor; and (3) that she suffered some "special injury" or damage beyond the usual expense, time, or annoyance attributable to defending a lawsuit. *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1350 (Ill. 1997). Here, the parties disagree as to when the prior criminal proceedings (*i.e.*, the ones allegedly pursued maliciously by Nolen) against Frazier were "terminated in her favor," thus starting one-year limitations period under the Tort Immunity Act. It is clear that Nolen caused the criminal proceedings against Frazier to be dismissed in September 2001. Defendants argue that because Frazier did not file her complaint until January 31, 2003, her malicious prosecution claim is time-barred. On the other hand, Frazier argues that because Nolen could have reinstated the criminal charges until March 17, 2002, this March date should be used to determine when her time period for filing the malicious prosecution claim began to accrue.

Frazier cites *Velez v. Avis Rent-A-Car Sys., Inc.*, 721 N.E.2d 652, 656 (Ill. App. Ct. 1999), for the general proposition that criminal proceedings do not terminate, for purposes of a malicious prosecution claim, until after the charges are dismissed *and* the time period for reinstating the charges has run. Unfortunately for Frazier, *Velez* does not hold that. Rather, the court in *Velez* specifically noted that prior appellate court rulings holding that a criminal case is not terminated when it is stricken with leave to reinstate were "no longer controlling" in light of the Illinois Supreme Court rulings in *Cult Awareness Network* and *Swick v. Liautaud*, 662 N.E.2d 1238 (Ill. 1996). *Velez*, 721 N.E.2d at 656. Under the new test, whether a withdrawal or an abandonment of criminal proceedings by the defendant constitutes a favorable determination

for purposes of bringing a claim for malicious prosecution "depends on the circumstances under which the proceedings are withdrawn." *Id.* at 655 (citing *Cult Awareness Network*, 685 N.E.2d at 1350). In other words, the dismissal of criminal charges against Frazier in September 2001 is a favorable termination, for purposes of bringing a malicious prosecution claim, unless the circumstances surrounding the dismissal indicate that the criminal charges were abandoned for reasons other than Nolen's knowledge of her innocence. *Velez*, 721 N.E.2d at 655-56 (citing *Swick*, 662 N.E.2d at 1242-43).

Here, I need look no further than Frazier's complaint to ascertain whether she has alleged any facts that would lead to a reasonable inference that Nolen abandoned the criminal charges against her for reasons *other than* his knowledge of her innocence. In the complaint, Frazier alleges that although Nolen brought criminal trespass against her, he knew that she had committed no crime and that there was no probable cause to arrest her. He requested, therefore, that the criminal charges against her be dismissed, and the court obliged.[1] Frazier makes no allegation that Nolen pursued any criminal charges against her after September 2001. Moreover, nothing in her complaint suggests that the criminal proceedings against her were abandoned for reasons other than Nolen's knowledge of her innocence. To the contrary, her allegations compel the inference that when Nolen requested the dismissal of criminal charges against her in September 2001, there existed a lack of reasonable grounds to pursue any criminal prosecution against her. The one-year statute of limitations for filing a malicious prosecution action, therefore, began to accrue in September 2001, and expired prior to the filing of Frazier's

---

[1] The fact that Nolen made this request, regardless of how the court responded, may itself be considered a termination in favor of Frazier. *See Velez*, 721 N.E.2d at 655.

complaint. Her claim against Nolen and the Board for malicious prosecution is therefore dismissed with prejudice.

## Count VI: Illinois Whistle Blower Protection Act

Frazier seeks recovery for Nolen's asserted violation of the Whistle Blower Protection Act, 105 ILCS 5/34-2.5c. The Act provides that engaging in certain enumerated acts of retaliation against school employees "shall be a Class A misdemeanor." 105 ILCS 5/34-2.5c(b), (c). Frazier's claim for relief pursuant to this Act fails because, as the court held in *Burke v. Chicago Sch. Reform Bd. of Trustees*, 169 F.Supp.2d 843, 848 (N.D. Ill. 2001), the Act does not provide a "private cause of action for whistleblower activities." Frazier's identical claim under 105 ILCS 5/34-2.5c is properly dismissed for the same reasons.[2]

## Count VII: Intentional Infliction of Emotional Distress Under Illinois Law

Frazier seeks recovery for intentional infliction of emotional distress (IIED) against Nolen, and the Board on the grounds of *respondeat superior*, for allegedly "harassing plaintiff Frazier, making false accusations against her, committing battery upon her person and causing her to be falsely arrested," actions which are allegedly "extreme and outrageous." Further, Frazier alleges that Nolen's actions were done intentionally and maliciously, and caused her to suffer "severe emotional distress." The elements of an IIED claim are: (1) the conduct involved

---

[2] Although the court in *Burke* referenced a different Whistle Blower provision toward the end of its opinion, namely 740 ILCS 175/4(b) – a comprehensive act revolving around the submission of false claims to the state – it was clear that the court was dismissing plaintiff's claim asserted under the 105 ILCS 5/34-2.4c. *See Burke*, 169 F.Supp.2d at 844.

must be truly extreme and outrageous; (2) the defendant must either intend that his conduct

inflict severe emotional distress, or know that there is at least a high probability that this conduct

will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional

distress. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Liability exists "only where

the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency." *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976).

Here, Frazier's IIED claim fails to allege facts sufficient to state a claim. She has alleged

that Nolen's conduct included calling the Chicago Police Department to report that Frazier was

an intruder in his office, bringing trespassing charges against her and causing her to be arrested

and charged by the Chicago Police Department even though he knew there was no probable

cause, slamming her with a door, intimidating and harassing her, attempting to suspend her

without pay for ten days, and interfering with her teaching the students in her classroom.[3]

Unfortunately, the conduct at issue cannot form the basis for an IIED claim for various reasons.

First, some of the conduct, namely slamming Frazier with a door, calling the police on her,

bringing trespassing charges against her, and causing her to be arrested and charged by the

Chicago Police Department, is time-barred for the purposes of a state law claim. As to the

remaining conduct, namely intimidating and harassing her, attempting to suspend her without pay

for ten days, and interfering with her teaching the students in her classroom, I find that this case

resembles the school personnel dispute in *Andrekus v. Bd. of Ed. of Dist. U-46*, No. 02 C 3960,

2003 WL 1475033 (N.D. Ill. Mar. 20, 2003). In *Andrekus*, plaintiffs were special education

---

[3] Frazier alleges that Nolen's conduct was "not limited to" these described incidents, but in light of the fact that I must judge whether the conduct at issue is truly extreme and outrageous, I ignore Frazier's general allegation of extreme and outrageous conduct that is not described in the complaint.

teachers who alleged a variety of retaliatory actions on the part of school officials, including: assignment to menial jobs; soliciting students to spy; making false and disparaging accusations concerning the plaintiffs; failing to honor grievance rights; cancelling pre-approved field trips; removing the plaintiffs as special education case managers without notice; and failing to timely notify plaintiffs of meetings. *See id.* at *2. In dismissing this count, the court held that "plaintiff's complaint does not amount to outrageous and extreme conduct required to sustain [an IIED claim]." *Id.* at *8. Here, Frazier's complaint – putting aside all time-barred conduct – asserts substantially the same allegations as in Andrekus, and as such, the allegations do not constitute outrageous and extreme conduct sufficient to state an IIED claim. Accordingly, I dismiss this count against Nolen.

In light of the fact that this count is dismissed against Nolen, there is no basis for sustaining this count against the Board under the doctrine of respondeat superior. However, even if this count had not been dismissed against Nolen, Frazier's argument that Nolen is the Board's alter ego on the basis that he committed the alleged torts in his capacity as school principal is without merit. *Rhodes v. Deere*, No. 90 C 20336, 1991 WL 352612, at *8 (N.D. Ill. Oct. 18, 1991) (school district superintendent not alter ego of board of education). Accordingly, this count is dismissed against the Board as well.

Punitive Damages[4]

As a final matter, Nolen argues that the Tort Immunity Act bars punitive damages against him should Frazier prevail on the one remaining count, Count I (First Amendment). However, a

---

[4] Because the Board's motion to dismiss is granted in full, any discussion as to their liability for punitive damages, costs or attorneys' fees is moot.

"jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  A state law such as the Tort Immunity Act does not grant immunity to a defendant for punitive damage claims grounded in federal law, such as Count I of Frazier's Complaint.  *See McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968).  Accordingly, Frazier's prayer for such relief is not stricken.

For the reasons above, Defendant Nolen's Motion to Dismiss Counts II-VII of Plaintiff's Complaint is GRANTED as to Counts II, III, IV, V, VI, and VII, but DENIED as to his prayer that Frazier's request for punitive damages be stricken, and Defendant Board's Motion to Dismiss Complaint is GRANTED in full.

ENTER:

James B. Zagel
United States District Judge

DATE: 27 Jun 2003